IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

STEVE DANBURY,

    Plaintiff,

v.

SANTANDER CONSUMER USA INC.,

    Defendant.

Case No. 1:18-cv-00078

## COMPLAINT

NOW COMES the Plaintiff, STEVE DANBURY, by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, SANTANDER CONSUMER USA INC., as follows:

## NATURE OF THE ACTION

1. This is an action brought by a consumer for violation(s) of the Telephone Consumer Protection Act, 47 U.S.C. § 227

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Danbury's Telephone Consumer Protection Act claim(s) under 28 U.S.C. §§ 1331 and 1337.

3. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

4. STEVE DANBURY ("Danbury") is a natural person, over 18-years-of-age, who at all times relevant resided at the property commonly known as 312 Red Oak Drive, Apartment 34, Kendallville, Indiana 46755.

5. Danbury is a "person" as defined by 47 U.S.C. § 153(39).

6. SANTANDER CONSUMER USA INC. ("Santander") a consumer finance company, provides vehicle finance and unsecured consumer lending products. The company offers new and used car loans, and auto and cash-back refinance services. It provides products through dealers in the United States. The company was incorporated in 1981 and is based in Dallas, Texas. Santander Consumer USA Inc. operates as a subsidiary of Santander Consumer USA Holdings Inc.

7. Santander is a "person" as defined by 47 U.S.C. § 153(39).

## FACTUAL ALLEGATIONS

8. In late 2017, Santander commenced a relentless telephone harassment campaign to collect an amount claimed in deficiency resulting from repossession of Danbury's vehicle.

9. In late-September/early-October, Danbury answered and was received by a pause, click, and dead air before being connected to the representative.

10. Specifically, there was a clear pause between the time Danbury said "hello," and the time that the representative introduced them self.

11. Danbury advised the representative of an inability to make payment, then demanded that Santander stop calling.

12. On multiple and numerous occasions thereafter, Danbury echoed his demand that Santander stop calling.

13. Danbury's demand(s) that Santander stop calling fell on deaf ears as Santander continued to place collection calls to Danbury's cellular telephone.

14. In total, Santander placed no less than 40 unconsented-to collection calls to Danbury' cellular telephone number ending in 6580.

15. Upon information and belief, Santander placed the collection calls to Danbury's cellular telephone number ending in 6580 utilizing a predictive dialer, an automated telephone dialing system that is commonly used in the debt collection industry to collect delinquent consumer debt.

16. At all times relevant, Danbury was the sole operator, possessor, and subscriber of the cellular telephone number ending in 6580.

17. At all times relevant, Danbury was financially responsible for his cellular telephone equipment and services.

## DAMAGES

18. Santander's collection calls have severely disrupted Danbury's everyday life and overall well-being.

19. Santander's collection calls have resulted in intrusion and occupation of Danbury's cellular services, thus impeding receipt of other calls.

20. Santander's phone harassment campaign and illegal collection activities have caused Danbury actual harm, including but not limited to, invasion of privacy, nuisance, loss of subscribed minutes, intrusion upon and occupation of Danbury's cellular telephone capacity, wasting Danbury's time, the increased risk of personal injury resulting from the distraction caused by the phone calls, decreased work productivity, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge his cellular telephone as a result of increased usage of his telephone services.

21. Concerned about the violations of his rights and invasion of his privacy, Danbury sought counsel to file this action to compel Santander to cease its unlawful conduct.

## CLAIMS FOR RELIEF

### COUNT I:
### Telephone Consumer Protection Act (47 U.S.C. § 227 *et seq*.)

22. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

23. Santander placed or caused to be placed no less than 40 non-emergency calls to Danbury's cellular telephone number ending in 6580 by utilizing an automatic telephone dialing system without the prior express consent of Danbury in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

24. In a 2003 declaratory ruling the Federal Communications Commission concluded that equipment which has the capacity to "store or produce numbers and dial those numbers at random, in sequential order, from a database of numbers" qualifies as an automatic telephone dialing system under the statute. 18 F.C.C.R. 14014, 14091-93 (2003).

25. In 2012, the Federal Communications Commission stated that a predictive dialer included "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 27 F.C.C.R. at 15392 n. 5 (2012).

26. The Federal Communications Commission "reiterate[d] that predictive dialers *** satisfy the Telephone Consumer Protection Act's definition of an 'autodialer.'" *Id*.

27. Upon information and belief, Santander utilized a predictive dialer to place or cause to be placed collection calls to Danbury's cellular telephone number ending in 6580, based upon

4

the "pause" in-between dial and pick-up time Danbury experienced during the collection call(s) he answered.

28. Upon information and belief, the predictive dialing system utilized by Santander predicts when agents will be free to take the next call and then dials numbers on the agent's behalf. The dialer uses algorithms to surmise the exact time that an agent should be finishing up with a call and then dials another number.

29. As pled above, any previously perceived expressed consent to be contacted, was revoked by Danbury on multiple and numerous occasions in late-September/early-October, 2017.

30. Upon information and belief, Santander has no system in place to document and archive whether it has prior express consent to contact consumers on their cellular telephones.

31. At all times material herein, Santander acted through its agents, employees, and/or representatives.

32. As a result of Santander's violations of 47 U.S.C. § 227 *et seq.*, Danbury is entitled to receive $500.00 in damages for each such violation.

33. As a result of Santander's *knowing and willful violations* of 47 U.S.C. § 227 *et seq.*, Danbury is entitled to receive up to $1,500.00 in treble damages for each such violation.

*THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK*

WHEREFORE, Danbury requests the following relief:

a.  find that Santander violated 47 U.S.C. § 227 *et seq.*;

b.  enjoin Santander from placing or causing to place calls to Danbury;

c.  award damages of $500.00 for each such violation;

d.  award treble damages up to $1,500.00 for each such violation; and

e.  grant any other relief deemed appropriate and equitable.

**Plaintiff demands trial by jury.**

March 30, 2018                                        Respectfully submitted,

*/s/ Joseph Scott Davidson*

Joseph Scott Davidson Mohammed Omar Badwan **SULAIMAN LAW GROUP, LTD.**
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com

*Counsel for Steve Danbury*

6